Filed 5/29/13  Banc of America Practice Solutions v. D'Angelo CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| BANC OF AMERICA PRACTICE SOLUTIONS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> PHILLIP D'ANGELO et al., <br><br> Defendants and Appellants. | B241891 <br><br> (Los Angeles County Super. Ct. No. LC092619) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Michael Latin and Huey P. Cotton, Judges.  Reversed.

Neary and O'Brien and Christopher J. Neary for Defendants and Appellants.

Law Offices of Marlene Leiva and Marlene Leiva for Plaintiff and Respondent.

_____

Defendants appeal from a default judgment entered after the trial court denied defendants' motion to set aside default. We reverse.

## BACKGROUND

On February 4, 2011, plaintiff Banc of America Practice Solutions, Inc. (plaintiff) filed this breach of contract action against defendants Phillip D'Angelo, D.D.S. and Phillip J. D'Angelo D.D.S., Inc. (collectively, defendants), alleging defendants owed plaintiff $95,271.21 plus pre-judgment interest under a Finance Agreement (agreement). Phillip D'Angelo borrowed $202,110.15 from plaintiff under the agreement. The corporate defendant (Phillip J. D'Angelo, D.D.S., Inc.) is not listed as a borrower in the agreement. Nor is the corporate defendant a signatory to the agreement.

Plaintiff personally served defendants with the summons and complaint on February 8, 2011 and filed proofs of service on February 15, 2011. Defendants did not file an answer to the complaint. On March 16, 2011, plaintiff served defendants by mail with a request for entry of default. Defendants filed the request for entry of default on March 17, 2011, and the trial court entered default that same day. On May 13, 2011, defendants filed the motion to set aside default which is at issue on appeal.

Dr. D'Angelo submitted a declaration in support of defendants' motion to set aside default. He stated, immediately upon receiving plaintiff's complaint, he contacted plaintiff to negotiate a loan modification to resolve the matter. From mid-February to mid-March 2011, he was in discussions with plaintiff's representatives, Jeff Schneider and Bob Gibson. During this period he "made the December 2010 payment on the loan and the January 2011 payment on the loan." He believed plaintiff "did not require or expect [him] to respond to the Complaint as all parties expected a loan modification would resolve the matter." During a telephone conversation with Bob Gibson on March 16, 2011, Gibson informed Dr. D'Angelo "it was likely a modification would not be worked out" and Dr. D'Angelo "'should take the Complaint seriously.'" Dr. D'Angelo contacted an attorney to represent him in this action.

Attorney Christopher Neary also submitted a declaration in support of defendants' motion to set aside default. He stated Dr. D'Angelo contacted him on March 16, 2011

2

regarding representation in this action. On March 22, 2011, Neary faxed a letter to plaintiff's counsel, requesting plaintiff stipulate to set aside the default and allow defendants to answer the complaint. In the letter, Neary informed plaintiff's counsel that Dr. D'Angelo had been trying to negotiate a loan modification with plaintiff's representatives, Jeff Schneider and Bob Gibson. Neary also explained: "Dr. D'Angelo got the impression that he should not worry about the Complaint until they made a decision on whether or not to modify the loan. On March 16, 2011, Bob called to inquire whether additional information requested by Mr. Schneider had been forwarded and during the same conversation, Mr. Gibson indicated that Dr. D'Angelo should take the Complaint seriously because there was an indication that the modification would not be successful. [¶] The default was applied for the same day. Dr. D'Angelo brought the Complaint to me after you had submitted the request for default." In the letter, Neary also pointed out the corporate defendant is not a party to the agreement. Plaintiff did not respond to Neary's March 22, 2011 letter.

Defendants brought the motion to set aside default, under Code of Civil Procedure[1] section 473, subdivision (b), on grounds the default was taken against defendants "through mistake, inadvertence, surprise and excusable neglect." Defendants argued: "Here, the default was requested a mere 40 days after the Complaint was filed during a time period when the Defendant was actively negotiating with the Plaintiff for a loan modification which negotiations would have resolved the litigation. Defendant was under the impression that he was not expected to respond to the litigation during the negotiating process and that he had an extension of time to respond as it was anticipated a response to the Complaint would not be necessary." Defendants also asserted: "Defendant first became aware that Plaintiff expected him to respond to the lawsuit on the same date Plaintiff requested his default be taken. In that Defendant lives in Mendocino County, California, in Northern California, and the action is pending in Los

---

[1] Further statutory references are to the Code of Civil Procedure.

3

Angeles County, it was unrealistic for defendant to retain an attorney and get an answer on file on March 16, 2011."

Defendants argued the motion was timely, brought well within the six-month statutory time limit. They also asserted their diligence in that they had immediately contacted an attorney when plaintiff's representative informed Dr. D'Angelo there would not be a loan modification and to take the complaint seriously. Six days after that March 16, 2011 conversation with Bob Gibson, defendants' attorney made a written request that plaintiff stipulate to set aside the default. Plaintiff did not respond to the letter from defendants' counsel. Defendants also argued plaintiff would suffer no prejudice if the action was decided on the merits. Defendants attached their proposed answer to their motion to set aside default.

Plaintiff filed an opposition to defendants' motion to set aside default. Robert Gibson submitted a declaration in support of plaintiff's opposition. He stated he was the Northwest Regional Portfolio Manager of plaintiff, in charge of the collections and customer service departments. In November 2010, he began having discussions with Dr. D'Angelo's "office manager, Michelle," and spoke with her "[o]n multiple occasions . . . regarding the possibility of a loan modification." According to Gibson's declaration: "During those discussions with Michelle, I indicated to her that if Dr. D'ANGELO stopped paying on the loan it would be considered in default and would likely not be considered for a loan modification, and that **despite the fact that we were in the process of trying to approve the loan modification that [plaintiff] would continue to move forward with the process if monthly payments were not made**." Gibson stated he informed Michelle on March 16, 2011 that plaintiff's "credit department declined the request for a loan modification." Gibson denied ever speaking directly with Dr. D'Angelo during the loan modification discussions.

In the opposition, plaintiff argued defendants did not present any evidence in connection with their motion to set aside default demonstrating defendants' failure to respond to the complaint was the result of mistake, inadvertence, surprise or excusable neglect within the meaning of section 473.

4

Defendants filed a reply brief in support of their motion to set aside default. Defendants attached a declaration from Michelle Williamson. She stated, in pertinent part: "In the regular course and scope of my duties as Office Manager, I make payments on behalf of Phillip D'Angelo D.D.S., Inc. During the months of January 2011, February 2011 and March 2011, I made the regular monthly payments from Phillip D'Angelo D.D.S., Inc. to Plaintiff. Specifically, a payment of $4,163.63 was made on January 20, 2011; a payment of $4,163.63 was made on January 31, 2011; and a payment of $4,163.63 was made on March 3, 2011."

Defendants also attached to their reply brief another declaration from Dr. D'Angelo. He stated: "Prior to March 16, I had direct discussions with Robert Gibson and an underwriter employed by Plaintiff. Mr. Gibson also communicated with me through Michelle Williamson who is my officer manager." Dr. D'Angelo set forth in his declaration that, on March 16, 2011, Gibson told Williamson the loan would not be modified. When Dr. D'Angelo contacted Neary on March 16 regarding representation in this action, he did not yet know plaintiff had requested entry of default.

In their reply brief, defendants argued: "Defendants do not assert that Plaintiff acted in bad faith, but rather that Defendants were mistaken as to the need to respond to the Complaint while negotiations for a loan modification were ongoing, and Defendants were surprised when their default was taken simultaneously with the end of the negotiations. [¶] It is undisputed that the loan modification discussions were ongoing prior to and following service of the Complaint. It is also undisputed that Plaintiff told Defendants that the legal process would be suspended during negotiations if Defendants continued making loan payments."

On June 29, 2011, the trial court issued a tentative ruling which it adopted as its final ruling after the parties submitted on the tentative. The ruling states: "The Court does not find mistake, inadvertence, surprise or excusable neglect on the part of defendants in failing to file an answer while negotiating a loan modification. Therefore, the Court does NOT grant relief under the discretionary portions of CCP section 473(b) for a party's mistake, inadvertence, surprise or excusable neglect. [¶] It was not

5

excusable or reasonable to avoid filing an answer. The summons clearly indicates that defendant has 30 days to file a response with the Court. [¶] The motion to set aside the default is DENIED."

On August 24, 2011, defendants filed a notice of appeal from the order denying their motion to set aside default. On March 15, 2012, this court dismissed the appeal on plaintiff's motion because an order denying a motion to set aside default is not an appealable order. (*Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981.)

On April 26, 2012, the trial court entered a default judgment. On June 3, 2012, defendants filed this appeal from the judgment.

## DISCUSSION

Defendants contend the trial court abused its discretion in denying their motion to set aside default. We agree.

Under section 473, subdivision (b), "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. Application for this relief shall be accompanied by a copy of the answer or other pleading proposed to be filed therein, otherwise the application shall not be granted, and shall be made within a reasonable time, in no case exceeding six months, after the judgment, dismissal, order, or proceeding was taken. . . . "

In deciding whether a party's mistake, inadvertence, surprise or neglect is excusable, "'the court inquires whether "a reasonably prudent person under the same or similar circumstances" might have made the same error.'" [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 258.) Where the mistake, inadvertence, surprise or neglect is excusable "and the party seeking relief has been diligent, courts have often granted relief pursuant to the discretionary relief provision of section 473 if no prejudice to the opposing party will ensue." (*Ibid*.)

"'A ruling on a motion for discretionary relief under section 473 shall not be disturbed on appeal absent a clear showing of abuse.' [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 257.) "'[B]ecause the law strongly

6

favors trial and disposition on the merits, any doubts in applying section 473 must be resolved in favor of the party seeking relief from default [Citations]. Therefore, a trial court order denying relief is scrutinized more carefully than an order permitting trial on the merits. [Citations.]'" (*McCormick v. Board of Supervisors* (1988) 198 Cal.App.3d 352, 360.)

Plaintiff concedes it was in negotiations with Dr. D'Angelo regarding a modification of the loan at issue in the complaint, up to and including March 16, 2011, the date plaintiff served defendants by mail with the request for entry of default. According to the declaration of plaintiff's representative Robert Gibson, during the loan modification discussions, Gibson informed Dr. D'Angelo plaintiff "would continue to move forward with the process if monthly payments were not made." (Underlining and bold font in original omitted.) The declaration of defendant's office manager, Michelle Williamson, establishes Dr. D'Angelo made "regular monthly payments" on the loan on January 20, 2011, January 31, 2011 and March 3, 2011. Gibson does *not* state he informed Dr. D'Angelo plaintiff would move forward with the litigation unless the loan was made current.

It is undisputed the first date plaintiff informed Dr. D'Angelo plaintiff had declined the loan modification was March 16, 2011, the date plaintiff served defendants by mail with the request for entry of default. On that same date, before having been informed plaintiff had requested entry of default, defendants contacted their attorney to represent them in this action.

Based on the evidence before us, we find a reasonably prudent person would have believed he had additional time to respond to the complaint before default would be taken. The evidence establishes plaintiff informed Dr. D'Angelo it would not move forward with this action so long as he was making payments on the loan and the parties were still negotiating a loan modification. On March 16, 2011, Gibson informed Dr. D'Angelo to "'take the Complaint seriously'" because the loan modification was being declined. It is undisputed plaintiff did not inform Dr. D'Angelo it was going to request entry of default that same day.

7

Defendants did take the complaint seriously. That same day, Dr. D'Angelo contacted an attorney to represent them in this action. On March 22, 2011, six days after plaintiff served defendants by mail with the request for entry of default, defendants' attorney faxed a letter to plaintiff's counsel requesting that plaintiff stipulate to set aside the default. In the letter, defendants' attorney questioned why plaintiff was proceeding against the corporate defendant when that party was not a borrower or signatory to the agreement. Plaintiff never responded to this letter. On May 13, 2011, less than two months after the trial court entered default, defendants filed their motion to set aside default.

Defendants established default was entered against them due to excusable mistake, surprise and neglect. Prior to March 16, 2011, it was reasonable for Dr. D'Angelo to believe plaintiff would not request entry of default because a loan modification would resolve the litigation. Dr. D'Angelo had continued to make payments on the loan. On March 16, 2011, the last day of negotiations, plaintiff served defendants by mail with a request for entry of default with no prior notice they intended to do so and without affording defendants even one day to file an answer with the court. Six days later, defendants requested in writing that plaintiff stipulate to set aside the default and plaintiff ignored the request. In opposition to defendants' motion to set aside default, plaintiff has demonstrated no prejudice.

"There can be no doubt that a trial court may find excusable neglect or surprise where settlement negotiations are being had between counsel, and where there is an oral or implied understanding that no default will be taken without notice, and counsel takes such a default without notice." (*Yarbrough v. Yarbrough* (1956) 144 Cal.App.2d 610, 616.) This principle applies equally where the negotiations occur between the parties directly rather than through counsel. (*Stegge v. Wilkerson* (1961) 189 Cal.App.2d 1, 4-5.)

The trial court abused its discretion in denying defendants' motion to set aside default. The material evidence is not in conflict.[2] Defendants established they were reasonably surprised to learn plaintiff had served a request for entry of default with no prior notice to defendants on the date loan modification negotiations ended and filed the request the next day. The trial court apparently ignored the actual circumstances which occurred between these parties when it found: "It was not excusable or reasonable to avoid filing an answer. The summons clearly indicates that defendant has 30 days to file a response with the Court." Applying this rationale, courts would never vacate defaults because the summons always states the defendant has 30 days to respond to the complaint. As discussed above, the law favors trial on the merits where excusable mistake, inadvertence, surprise or neglect is shown and the opposing party will suffer no prejudice. Any doubts are resolved in favor of the party seeking relief from default. (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 258; *McCormick v. Board of Supervisors*, *supra,* 198 Cal.App.3d at p. 360.)

**DISPOSITION**

The judgment is reversed. Defendants are entitled to recover costs on appeal.

NOT TO BE PUBLISHED.



CHANEY, J.

We concur:



MALLANO, P. J.



ROTHSCHILD, J.

---

[2] Where the evidence is in "'"substantial conflict . . . , a determination of the controverted facts by the trial court will not be disturbed."'" [Citation.]" (*Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at p. 258.)

9